# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JACQUELINE L. HOLLEY,                )
                                     )
                    Plaintiff,       )
                                     )      **CIVIL ACTION**
v.                                   )
                                     )      **No. 12-4057-JWL**
CAROLYN W. COLVIN,[1]                )
Acting Commissioner of Social Security, )
                                     )
                    Defendant.       )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.      Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI, alleging disability beginning November 6, 2007. (R. 10, 123-34). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges the Administrative Law Judge (ALJ) erred in evaluating her mental impairments at steps two and three of the Commissioner's five-step sequential evaluation process; applied the incorrect legal standard to evaluate the credibility of Plaintiff's allegations of symptoms by focusing on factors other than the six factors determined by the Tenth Circuit Court of Appeals to be relevant to a determination of credibility; failed to weigh the record medical opinions properly; and provided an erroneous residual functional capacity (RFC) assessment which failed to incorporate Plaintiff's need to take frequent restroom breaks and Plaintiff's physical RFC as opined by treating physician, Dr. Carver.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Because Plaintiff's first argument, that the ALJ erred in evaluating her mental impairments at steps two and three of the Commissioner's five-step sequential evaluation process, rests in part on allegations of error in weighing the medical opinions of Dr. Wilkinson and Dr. Fantz, the court begins by reviewing the ALJ's evaluation of the medical opinions. It then reviews the step two and three evaluation, the credibility determination, and finally, Plaintiff's remaining RFC arguments. The court finds no reversible error in the decision below.

## II.     Evaluation of the Medical Opinions

The ALJ summarized and discussed the treatment records and medical evidence regarding numerous physicians and psychologists during his step two evaluation (R. 12-

13) and his RFC analysis. (R. 15-17). He specifically summarized each medical opinion and stated his evaluation of the weight to be accorded to each opinion at the end of his RFC analysis. (R. 18-19). The ALJ noted that five physicians had examined Plaintiff, reviewed her medical records, and prepared a report regarding her physical capabilities in relation to her workers' compensation claim: Dr. Amundson, Dr. Prostic, Dr. Zimmerman, Dr. Zarr, and Dr. Bieri. (R. 18).

Each of these physicians opined that Plaintiff was able to return to employment, but at various exertional levels and with various additional limitations. Id. Dr. Amundson opined that Plaintiff was able to work at only a sedentary level, and the ALJ accorded this opinion "great weight" because it was consistent with the record as a whole, was made after evaluation of the claimant, and was made after a review of all of claimant's medical records. Id. Dr. Zarr opined that Plaintiff could return to full time regular duty without restrictions, and Drs. Prostic and Bieri opined that Plaintiff could perform work at light to medium exertion, and the ALJ accorded "great weight" to each of these three opinions, but in each case specifically noted that he had reduced Plaintiff's exertional level to sedentary "based on the claimant's subjective complaints." Id. Dr. Zimmerman opined that Plaintiff was limited to light work but that Plaintiff needed to change positions frequently when sitting or standing. (R. 18). The ALJ accorded Dr. Zimmerman's opinion only "some weight," noting that there is no evidence of significant disc degeneration or nerve-related impairment which would support a finding that Plaintiff needs to change position frequently while sitting. Id.

The ALJ noted that Plaintiff's primary care physician, Dr. Carver, had provided an opinion that Plaintiff could not perform even sedentary work because Plaintiff is limited to sitting and standing less than two hours a day each.  Id.  He accorded this opinion "little weight" because it is not supported by the record, because there is no objective medical evidence to support such drastic restrictions, and because the opinion is "wholly inconsistent with the other opinions contained within the record."  Id.

The ALJ accorded "great weight" to the opinion of the state agency physician, Dr. Siemsen, with regard to Plaintiff's physical RFC.  (R. 19) (citing Ex. 13F (wherein Dr. Siemsen "affirmed as written" the RFC assessment dated 3-12-09)).

The ALJ also considered opinions with regard to Plaintiff's mental impairments and mental RFC.  He recognized that Dr. Wilkinson had provided a report of her consultative examination of Plaintiff at the request of the Social Security Administration, and that a state agency psychologist had also provided a mental RFC assessment.  (R. 18-19).  He accorded only "limited weight" to Dr. Wilkinson's opinion because it was based on Plaintiff's subjective complaints regarding her physical impairments, because there is no objective evidence to support Plaintiff's complaints, and because Dr. Wilkinson recognized that Plaintiff appeared to be "faking bad."  (R. 18-19).  The ALJ also accorded "limited weight" to the state agency psychologist's opinion because Plaintiff has sought no mental health treatment, because Dr. Wilkinson "believed the claimant's responses to certain questions were not fully reliable, and because Plaintiff appeared to be "faking bad."  Id., at 19.

## A.    Standard for Evaluating Medical Opinions

A treating physician's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  And, when a treating source opinion is not given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013).  Moreover, a treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using" those same factors.  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R.

§§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, a court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

### B. Medical Opinions Regarding Mental Impairments

Plaintiff claims error in the ALJ's evaluation of Dr. Wilkinson's opinion, and the opinion of the state agency physician, Dr. Fantz.  She argues that MRI results and x-rays are objective evidence supporting Plaintiff's complaints, which is contrary to the ALJ's finding--that there is no objective evidence to support Plaintiff's complaints.  (Pl. Br. 24). Plaintiff's argument is without merit.  Plaintiff merely cites to "MRI results and x-rays set forth in the summary of medical" (Pl. Br. 24), without pointing to the MRI and x-ray results which she believes support her complaints, and without explaining how that evidence supports her complaints or how it demonstrates error in the ALJ's evaluation of

Dr. Wilkinson's opinion.  The court will not construct Plaintiff's argument for her.  <u>May v. Colvin</u>, ___ F.3d ___, ___, 2014 WL 56255 at *5 (10th Cir. 2014).

Moreover, the ALJ gave three reasons for discounting Dr. Wilkinson's opinion:  it was based on Plaintiff's subjective complaints regarding her physical impairments; there is no objective evidence to support Plaintiff's complaints; and Dr. Wilkinson recognized that Plaintiff appeared to be "faking bad."  Plaintiff does not even suggest that Dr. Wilkinson's opinion was not based on Plaintiff's subjective complaints regarding her physical impairments.  Finally, Plaintiff argued while discussing Dr. Fantz's opinion that although Dr. Wilkinson stated that Plaintiff appeared to be "faking bad," Dr. Wilkinson also indicated that MMPI testing should be done for objective verification of "faking bad."  (Pl. Br. 28), <u>see also</u> (Reply 8).  Plaintiff now suggests that because there was no MMPI testing, "there is no verification and therefore no substantial evidence that Plaintiff was 'faking bad.'"  (Reply 8).

Plaintiff reads too much into Dr. Wilkinson's report.  Dr. Wilkinson stated:

> [Plaintiff] tended to endorse every symptom although examples she gave often did not meet clinical criteria.  For example, when asked about visual hallucinations, she said she might see things when she was asleep. Although this must be considered with caution, I will share that I questioned several times if she was "faking bad" as might be measured through a [sic] MMPI.

(R. 462).  Contrary to Plaintiff's assertion, Dr. Wilkinson did not suggest that MMPI testing should be done in this case.  Rather, she expressed that several times Plaintiff's conduct left her with the impression that Plaintiff was "faking bad" in the sense of that

term as it is measured by an MMPI. Dr. Wilkinson's statement was a comparison, not a recommendation. In context, the evidence supports the ALJ's finding that Dr. Wilkinson believed Plaintiff "appeared to be 'faking bad.'" (R. 19). Plaintiff has shown no error in the ALJ's evaluation of Dr. Wilkinson's medical opinion.

As to the opinion of the state agency psychologist, Dr. Fantz, Plaintiff claims the ALJ erred in finding that Plaintiff sought no treatment for any mental health impairment. (Pl. Br. 23), (Reply 8). She also argues that the ALJ should not have found "faking bad" without first ordering MMPI testing. Plaintiff's argument regarding MMPI testing was considered above and will not be repeated here, except to note that it was appropriate to partially discount Dr. Fantz's opinion, which was based upon a review of Dr. Wilkinson's report, because Dr. Wilkinson believed Plaintiff was "faking bad."

Plaintiff argues that she has taken medications, amitriptyline and cymbalta, as treatment for her mental impairments. (Pl. Br. 23), (Reply 8). While it is true that the record contains evidence that Plaintiff takes medication prescribed by Dr. Carver for depression, it is also true that Dr. Carver is Plaintiff's primary care physician, and that Plaintiff has sought no specific mental health treatment. In these circumstances, it is not error for the ALJ to find that Plaintiff "has sought no treatment for any mental impairment" (R. 19), and to use that as an additional factor in discounting Dr. Fantz's medical opinion. Plaintiff has shown no error in the ALJ's evaluation of Dr. Fantz's medical opinion.

### C.     Medical Opinions Regarding Physical Impairments

Although, as the ALJ recognized, Dr. Carver was Plaintiff's treating physician, the

ALJ's determinations not to give her opinion controlling weight and to accord it "little

weight" are amply explained in the decision and are supported by substantial record

evidence.  As summarized above, the ALJ explained the weight accorded to each medical

opinion and the bases for those findings in his decision.  Plaintiff ignores the ALJ's

evaluation of the opinions of Drs. Amundson, Prostic, Zimmerman, Zarr, and Bieri, but

asserts that the ALJ's evaluation of Dr. Carver's opinion is conclusory boilerplate, that an

inconsistency with other opinions in the record does not mean that the other opinions

should be the ones accorded greater weight, and that the ALJ erroneously elevated his

own non-medical opinion over the medical opinion of Dr. Carver.  (Pl. Br. 42).  She also

argues that the ALJ did not discuss Dr. Carver's treatment notes (Pl. Br. 42), and that the

ALJ's determination to accord "great weight" to the opinion of the state agency

physician, Dr. Siemsen,[2] was erroneous, because the determination rested merely on

conclusory findings, and the ALJ did not connect the dots between the opinions, the

evidence, and his conclusions.  Id. at 43.

The ALJ discounted Dr. Carver's opinion because it is not supported by the record,

because there is no objective medical evidence to support such drastic restrictions, and

because the opinion is "wholly inconsistent with the other opinions contained within the

_____

[2]In her Social Security Brief, Plaintiff mistakenly referred to this physician as Dr.
Stern, but cited to Exhibit 13F which is Dr. Siemsen's opinion.  (Pl. Br. 43).  In her Reply
Brief, Plaintiff corrected her mistake.  (Reply 9, n.3).

record." (R. 18). While it is true that the ALJ's determination is stated as a conclusion, in context it is neither conclusory, nor boilerplate. As noted in the court's summary above, the ALJ summarized the record evidence and the medical opinions at pages 12-13, and 15-19 of the record. When this summary of the record is compared with Dr. Carver's opinion, it becomes clear that her opinion is not supported by the record, and Plaintiff does not cite to any record evidence tending to support Dr. Carver's opinion. (Pl. Br. 42), (Reply 6-7). Moreover, Plaintiff does not cite, and the court is unable to find record evidence other than Dr. Carver's medical opinion suggesting that Plaintiff can sit less than two hours in a day and can stand and walk less than two hours in a day. Finally, and perhaps most importantly, there can be no doubt that Dr. Carver's opinion is, as the ALJ found, "wholly inconsistent with the other opinions contained within the record." (R. 18). As noted above, each of those other medical opinions in the record which concern Plaintiff's physical RFC concluded that Plaintiff was able to perform full time work activity, and none of them suggested that she was limited to less than two hours of sitting, or less that two hours of standing and walking in an eight-hour workday. Dr. Amundson's opinion comes the closest to Dr. Carver's limitations, and he released Plaintiff to sedentary work (R. 389), which is generally defined as work which "involves sitting" and in which "walking and standing are required occasionally" or up to one-third of the workday. 20 C.F.R. §§ 404.1567(a), 416.967(a). Dr. Amundson's opinion suggests significantly more sitting ability than does Dr. Carver's, and it also suggests

somewhat more standing and walking ability.  Substantial evidence supports each of the ALJ's reasons for discounting Dr. Carver's opinion.

The court agrees with Plaintiff that "[b]ecause Dr. Carver's opinion is inconsistent with other opinions in the record does not mean those opinions should be automatically provided more weight than Dr. Carver's opinion," (Pl. Br. 42), but the court does not perceive that in this case the other opinions were <u>automatically</u> provided greater weight. As discussed above, and as the ALJ found, <u>all</u> of the opinions in the record regarding physical limitations were significantly different than Dr. Carver's opinion, there was no objective medical evidence supporting Dr. Carver's "drastic" limitations, and the record does not support Dr. Carver's opinion.

Although the court is aware of no authority requiring an ALJ to discuss all of the treatment notes, the decision does not support Plaintiff's assertion that the ALJ did not discuss Dr. Carver's treatment notes.  (Pl. Br. 42).  In discussing Dr. Carver's treatment of Plaintiff, the ALJ specifically cited to Dr. Carver's treatment notes at Exhibit 5F, pages 5, 9, and 18, and at Exhibit 4F, page 1.  (R. 15).  Although not required to discuss every treatment note, the decision reveals clearly that the ALJ considered Dr. Carver's treatment notes, and Plaintiff cites to no treatment note which precludes the ALJ's findings regarding Dr. Carver's opinion.

Finally, the evidence does not support Plaintiff's insinuation that the ALJ substituted his lay opinion for the medical opinion of Dr. Carver.  (Pl. Br. 42) (citing <u>Victory v. Barnhart</u>, 121 F. App'x 819, 825 (10th Cir. 2005)).  The court is unable to

ascertain the relevance of <u>Victory</u> to Plaintiff's argument, for the cited portion of <u>Victory</u> deals with an ALJ's failure to mention two medical opinions and failure to articulate the weight assigned to a third. <u>Id.</u>, 121 F. App'x at 825. Here, the ALJ considered and discussed Dr. Carver's opinion and specifically accorded that opinion "little weight," and explained his bases for doing so.

In any case, the ALJ here did not substitute his opinion for that of Dr. Carver. Rather, he performed his duty under the Act to evaluate the medical opinions and to assess Plaintiff's RFC. Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." <u>Howard v. Barnhart</u>, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." <u>McDonald v. Astrue</u>, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." <u>Dixon v. Apfel</u>, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999); <u>see, also</u>, 20 C.F.R. §§ 404.1545(a), 416.945(a) (RFC is assessed based on all of the relevant evidence); §§ 404.1546(c), 416,946(c) (ALJ is responsible for RFC assessment).

Dr. Siemsen is a state agency physician who reviewed and affirmed the Physical RFC Assessment form of a single decisionmaker which was dated 3/12/2009. <u>Compare</u> (R. 233-40) (Physical RFC Assessment form signed by single decisionmaker Artur R.

Oczko), with (R. 489) (Case Analysis, signed by Dr. Siemsen).  In his Case Analysis, Dr. Siemsen stated that he had reviewed all of the record evidence in the file and that "the RFC and and/or [sic] assessment of 3-12-09 is affirmed as written."  (R. 489).  Therefore, the Physical RFC Assessment form signed by the single decisionmaker reflects the medical opinion of Dr. Siemsen.  Thus, it is clear that Dr. Siemsen opined that Plaintiff is able to perform the full range of sedentary work.  (R. 233-40).  The ALJ stated that he gave this opinion "'great weight' because it is consistent with [the] record as a whole, and it has given some credence to the claimant's subjective complaints."  (R. 19).

Plaintiff's claim that "Dr. Siemsen's opinion does not contain any of his own personal medical findings or analysis" (Reply 9), is without merit.  To be sure, Dr. Siemsen did not write the Physical RFC Assessment form at issue, but he knew it was the opinion of a single decisionmaker, not a physician, and he nevertheless affirmed that assessment "as written."  Thus, Dr. Siemsen adopted it as his own, and it became his medical findings and analysis as surely as if he had written it himself.

Plaintiff's claims that the ALJ's evaluation of Dr. Siemsen's opinion is conclusory and not supported by substantial evidence, and that the ALJ did not connect the dots between the opinion and the evidence, likewise fail.  First, Plaintiff does not point to any record evidence which would preclude the ALJ's finding regarding Dr. Siemsen's opinion.  Moreover, in context of the decision as discussed above, it is clear that the evidence supports the ALJ's conclusions.  Finally, although Plaintiff claims the ALJ did not connect the dots in his decision, the decision in this case is sufficiently specific to

15

make clear the weight the ALJ gave to the medical opinions and the reasons for that weight. That is all the law requires. Oldham, 509 F.3d at 1258.

## III.    Step Two and Step Three Evaluation

Plaintiff's claim of error at step two and step three of the sequential evaluation process rests primarily upon the opinions of Dr. Wilkinson and Dr. Fantz. Because the court has found that the ALJ properly discounted those opinions, Plaintiff's arguments based thereon must also fail. Plaintiff argues primarily that the ALJ should have found that depression and anxiety are severe impairments, but points to little evidence other than the opinions of Drs. Wilkinson and Fantz to support her argument. Plaintiff points to an alleged difficulty remembering things and to the fact that she quit college after only two years as evidence that her mental impairments were more severe than acknowledged by the ALJ, (Pl. Br. 25), but this argument ignores that the ALJ specifically acknowledged Plaintiff's medically determinable mental impairment of learning disorder and found that it was not severe because it does not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. Plaintiff points to no evidence that the degree of limitation in her basic mental work activities (understanding, carrying out, or remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; or dealing with changes in a routine work setting) is more than minimal.

Most of Plaintiff's remaining argument that her mental impairments are severe is based upon her own reports or testimony. (Pl. Br. 25-27) (i.e. "Plaintiff indicated," "she

felt," "Plaintiff stated").  However, the ALJ found that Plaintiff's allegations of symptoms are not credible, and the court next proceeds to find that the ALJ's credibility determination is supported by substantial evidence.  Plaintiff has pointed to no error in the ALJ's evaluation of her mental impairments.

## IV.    The Credibility Determination

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  They "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms.  Thompson, 987 F.2d at 1488 (dealing specifically with pain).

A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical

17

evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating credibility, the Tenth Circuit has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or

restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### A. The ALJ's Credibility Determination

As noted above, the ALJ summarized and discussed the treatment records and medical evidence both during his step two evaluation (R. 12-13) and his RFC analysis. (R. 15-17). His credibility determination during his RFC analysis was concurrent with his summary of the treatment records and of the other evidence. (R. 14-17). The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible. (R. 16). He then stated and explained seven reasons for that determination: (1) Plaintiff reported to her physician that she received a fifty percent improvement with her pain after receiving steroid injections; (2) despite this, Plaintiff did not continue to seek steroid injections; (3) many doctors who examined Plaintiff concluded there was no objective medical evidence to support her allegations; (4) despite numerous examinations for workers' compensation, Plaintiff did not seek consistent treatment for her alleged symptoms; (5) Plaintiff's use of her TENS unit only approximately once a week suggests her back and leg pain is not as severe as alleged; (6) Plaintiff has only a fair work history, working numerous jobs and holding some for only a very short time; and (7) Plaintiff's limited activities of daily living appear to be based on self-imposed restrictions, not on actual physical limitations. (R. 16-17).

### B. The Parties' Arguments

Plaintiff claims the ALJ applied the incorrect legal standard in his credibility determination by focusing on factors which have not been approved by the Tenth Circuit for evaluating the credibility of a claimant's allegations of symptoms. She claims the ALJ focused on the lack of objective medical evidence supporting the symptoms alleged by Plaintiff and thereby adopted the very position criticized in Luna--that objective medical evidence must establish the presence of the alleged symptoms. (Pl. Br. 31). Thereafter, Plaintiff discusses each of the six factors she asserts have been approved by the Tenth Circuit, and explains how in her view those factors, as properly evaluated, demonstrate that Plaintiff's allegations of symptoms are credible. (Pl. Br. 32-40). The Commissioner argues that the ALJ properly considered the credibility of Plaintiff's allegations, and that substantial record evidence supports that determination. (Comm'r Br. 7-11.

### C.     Analysis

Plaintiff's argument that certain factors for evaluating credibility have been "approved" by the Tenth Circuit indicates a misunderstanding of that court's decision in Luna. In Luna, the Tenth Circuit held that the district court erred in its definition of "objective" evidence, and clarified that "objective" evidence is "any evidence an examining doctor can discover and substantiate," whereas "subjective" evidence "consists of statements by a claimant or other witnesses on his behalf that are not based on information which an impartial medical expert can evaluate either from examining the claimant himself or from evaluating the claimant's test results or examination reports."

Luna, 834 F.2d, at 162 & n.2.  The court went on to hold that when a claimant first establishes a symptom-producing impairment by objective medical evidence, if there is a "loose nexus" between that impairment and the Claimant's subjective allegations of pain, then the court must consider all the evidence, both objective and subjective, to determine whether the claimant's symptom is in fact disabling.  Id. at 163-65.  The court then explained its conclusion:

> Requiring consideration of evidence beyond laboratory and test results whenever a loose nexus is established between the pain-causing impairment and the pain alleged does not force decision makers to decide cases based solely on their evaluation of the credibility of the wholly subjective statements of the claimant.  Although pain is subjective in that no one can know how much of it a particular nerve stimulus causes another person, many indicators give us some idea how much pain another is feeling. Anyone who has visited the dentist knows that one who is able to have his teeth filled without novocain is less sensitive to pain than one who requires a shot of the drug.  Similarly, those with identical impairments may require vastly different painkillers.  The one who needs only aspirin surely feels less pain than the one requiring a much stronger drug.  In previous cases, we have recognized numerous factors in addition to medical test results that agency decision makers should consider when determining the credibility of subjective claims of pain greater than that usually associated with a particular impairment.  For example, we have noted a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems.  See Turner [v. Heckler], 754 F.2d [326, 331 (10th Cir. 1985)]; Nieto [v. Heckler], 750 F.2d [59, 62 (10th Cir. 1984)].  The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication. Polaski [v. Heckler], 751 F.2d [943, 948 (8th Cir. 1984)].  Of course no such list can be exhaustive.  The point is, however, that expanding the decision maker's inquiry beyond objective medical evidence does not result in a pure credibility determination.  The decision maker has a good deal more than the appearance of the claimant to use in determining whether the claimant's pain is so severe as to be disabling.

Luna, 834 F.2d at 165-66.

As Luna makes clear, use of objective evidence is not precluded in a credibility determination, rather consideration is expanded beyond that evidence and beyond even a pure credibility determination. Moreover, the Luna court specifically recognized that "no such list [of relevant credibility factors] can be exhaustive," and that the Secretary (now the Commissioner) has noted several factors for consideration in a credibility determination. Luna, 834 F.2d at 166. The question regarding the factors used by the ALJ in evaluating credibility is not whether the factors have been "approved" by the Tenth Circuit, but whether the factors used are relevant to the determination in a particular case. Plaintiff presents no evidence that the factors used here are irrelevant.

Plaintiff's argument implies that in relying upon an alleged absence of medical support the ALJ was requiring that medical evidence must establish the existence of severe pain in this case. The court does not see such a requirement. As noted above, the ALJ articulated seven reasons to discount the credibility of Plaintiff's allegations. The third of these reasons relied upon the fact that many doctors who examined Plaintiff concluded there was no objective evidence to support her allegations. The other six reasons relate to subjective evidence which suggests that Plaintiff's allegations are not credible.

In his second reason to discount the credibility of Plaintiff's allegations the ALJ noted that Plaintiff did not seek further steroid injections despite having great improvement from earlier steroid injections, and in his fourth reason the ALJ noted that

Plaintiff did not seek consistent <u>treatment</u> for her symptoms despite numerous workers' compensation <u>examinations</u>. Plaintiff argued in her Brief that "[b]efore the ALJ may rely on the claimant's failure to pursue treatment as support for his determination of credibility," he must apply the four-part <u>Frey</u> test to determine whether the failure was excusable. (Pl. Br. 32) (citing <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987)).

As Plaintiff's argument suggests, the <u>Frey</u> court noted that, "In reviewing the impact of a claimant's failure to undertake treatment, . . . [a court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." <u>Id.</u>; <u>see also</u>, <u>Thompson</u>, 987 F.2d at 1486 (applying the <u>Frey</u> test to a case where the claimant stopped taking prescription medication).

In 2000, the Tenth Circuit visited a similar issue in which an ALJ found the plaintiff incredible, in part, because of a failure to take pain medication for allegedly severe pain. <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). Plaintiff argued this finding was error because "he took pills his friends gave him," although he did not know what he was taking, and did not indicate the frequency with which this occurred, and he argued that the <u>Frey</u> test should have been applied. <u>Id.</u> The court found the <u>Frey</u> test inapposite "because <u>Frey</u> concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." <u>Id.</u> The court explained its finding:

The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

Id.

In Goodwin v. Barnhart, 195 F. Supp. 2d 1293 (D. Kan. 2002), Judge Crow explained how the holdings in Frey, Thompson, and Qualls should be reconciled:

The court has no trouble reading Qualls so as to be consistent with Thompson. The claimant in Qualls argued "that the ALJ erred in relying on plaintiff's failure to take medication for severe pain" because there was evidence that he took pain pills from friends and because the ALJ did not have the evidence necessary to consider the Frey factors. 206 F.3d at 1372. As the Tenth Circuit observed, the credibility issue in Qualls was not whether the claimant had refused to follow prescribed treatment but whether he had attempted to relieve his pain, "including whether he took pain medication." Id. Thus, the panel in Qualls did not consider the rule from Thompson, as the ALJ had not denied benefits because the claimant had refused "to follow prescribed treatment." Id.

Goodwin, 195 F. Supp. 2d at 1296; see also, Allen v. Apfel, No. 99-3249, 2000 WL 796081, *3 (10th Cir. June 21, 2000) (making the same distinction).

Here, as in Qualls the ALJ was not relying on Plaintiff's refusal or failure to follow prescribed treatment, but was considering what attempts Plaintiff had made to relieve her pain. As Plaintiff admits, "no additional steroid injections were offered." (Pl. Br. 32). Moreover, no physician referred her for additional, consistent treatment. What the ALJ was noting was not that Plaintiff had refused or failed to follow prescribed treatment, rather, he was noting that Plaintiff did not seek consistent treatment to help relieve her alleged pain, and that she had not sought additional steroid injections despite her

admission that they improved her pain.  In these circumstances, there was no need to

apply the <u>Frey</u> test.

Plaintiff's discussion of the six factors allegedly approved by the Tenth Circuit,

and explanation of how those factors, as "properly" evaluated, demonstrate that Plaintiff's

allegations of symptoms are credible constitutes an attempt to have the court reweigh the

evidence regarding credibility and substitute its judgment for that of the Commissioner.

The court is forbidden to take such action.  <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>,

395 F.3d at 1172.  Moreover, "[t]he possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence.  We may not displace the agency's choice between

two fairly conflicting views, even though the court would justifiably have made a

different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations,

quotations, and brackets omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S.

607, 620 (1966).

Nonetheless, Plaintiff points to one error in the ALJ's credibility determination

when she asserts that the ALJ failed "to consider, mention or discuss the function reports

completed by Plaintiff's husband Henry Holley."  (Pl. Br. 35).  As Plaintiff's argument

suggests, the Tenth Circuit has found that the Commissioner has a duty to consider third-

party opinion evidence.  <u>Blea</u>, 466 F.3d at 914-15; <u>Adams v. Chater</u>, 93 F.3d 712, 715

(10th Cir. 1996).  In <u>Adams</u>, the court "decline[d] claimant's invitation to adopt a rule

requiring an ALJ to make specific written findings of each witness's credibility,

particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The <u>Adams</u> court found "that the ALJ considered the testimony of claimant's wife in making his decision because the ALJ specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. <u>Id.</u> Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony. <u>Blea</u>, 466 F.3d at 915.

In <u>Blea</u>, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife. <u>Blea</u>, 466 F.3d at 914. The Commissioner's decision in <u>Blea</u> did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and severity of her husband's impairments. <u>Id.</u> at 914. The Commissioner asserted that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility. <u>Id.</u> The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'" <u>Id.</u> at 915 (quoting <u>Adams</u>, 93 F.3d at 715). The <u>Blea</u> court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in

making his decision." Id. (internal quotation marks, brackets, and citation omitted).

Therefore, the case was remanded for the Commissioner to consider Mrs. Blea's testimony properly. Id.

This case more closely reflects the facts presented in Blea than in Adams. As in Blea, the decision in this case did not mention any particulars of Plaintiff's husband's report, and does not even recognize that Plaintiff's husband provided function reports. There is simply no particular indication in the decision that the ALJ considered, or was even aware of, Mr. Holley's report. This is error. Nevertheless, in a situation similar to that presented here the Tenth Circuit found that the error was not grounds for remand because the third-party evidence was largely cumulative of the plaintiff's testimony. Brescia v. Astrue, 287 F. App'x 626, 630 (2008) (citing Adams, 93 F.3d at 715; and Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding that an ALJ is not required to discuss every piece of evidence)). As in Brescia, Mr. Holley's function reports are largely cumulative of Ms. Holley's reports and testimony.

Moreover, in the past the Tenth Circuit has decided not to remand for an error in the credibility determination where "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004). Here, the ALJ provided seven reasons to discount the credibility of Plaintiff's allegations of symptoms, all of which are supported by substantial record evidence. Although the ALJ did not specifically mention Mr. Holley's reports, he stated that he had considered "all of the evidence," (R. 10), and had made his credibility

determination after "careful consideration of the evidence." (R. 16). Moreover, Mr. Holley's reports are largely cumulative of Ms. Holley's reports and testimony. Therefore, the court finds that the error in failing to mention Mr. Holley's reports is harmless and does not require remand.

## V.     RFC Assessment

Plaintiff claims the ALJ's RFC assessment is erroneous because it failed to incorporate Plaintiff's need to take frequent restroom breaks due to incontinence, and failed to incorporate Plaintiff's physical RFC as opined by her treating physician, Dr. Carver. As discussed above, the ALJ properly discounted the medical opinion of Dr. Carver. Therefore, it was not error to omit the limitations opined by Dr. Carver from the RFC assessed.

The ALJ found that Plaintiff's incontinence, although medically determinable was not a severe impairment--meaning that it has no more than a minimal effect of Plaintiff's ability to perform basic work activities. (R. 12-13). He made this determination based upon Dr. Ilorta's treatment of Plaintiff, his finding of fairly unremarkable results from testing and his prescription of Vesicare. (R. 12-13). He also noted Plaintiff's report that she was doing much better with Vesicare, and Dr. Bieri's report that Plaintiff's urologic evaluation revealed no significant abnormalities. (R. 13).

Plaintiff argues that Dr. Bieri's report "is simply not true," (Pl. Br. 44), that Dr. Carver noted urinary incontinence, and that Plaintiff reported she has to go to the restroom every one and one-half hours. (Pl. Br. 45). The ALJ properly found Plaintiff's

allegations not credible, and therefore need not accept her allegation that she must use the restroom every hour and one-half.  Moreover, the treatment note in which Plaintiff asserts that Dr. Carver noted that Plaintiff suffers from urinary incontinence states that Plaintiff complains of urinary incontinence and that she has urinary incontinence due to L3-L4 irritation due to disc disease.  (R. 408, 410).  Further, Dr. Carver also states, "symptoms improving with epidural."  (R. 408).  This is no basis to find that urinary incontinence has more than a minimal affect on Plaintiff's ability to perform basic work activities, or to find that Plaintiff must use the restroom every hour and a half.  Finally, Dr. Bieri's report to which the ALJ cites, states that Plaintiff "did undergo urologic evaluation, which revealed no significant abnormalities."  (R. 541).  Despite Plaintiff's assertion that this "is simply not true," it, nevertheless constitutes substantial record evidence supporting the ALJ's determination not to include frequent restroom breaks in the RFC assessment. Plaintiff has shown no error justifying remand in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Dated this 15th day of January 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**